# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### CIVIL ACTION NO.: 3:06CV70

| | | |
|---|---|---|
| **VICTOR HOWARD and** | ) | |
| **GERMAINE HOWARD,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **ORDER** |
| **vs.** | ) | |
| | ) | |
| **THOMAS P. BRIM, Substitute** | ) | |
| **Trustee, and LIBERTY SAVINGS** | ) | |
| **BANK, FSB,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

   **THIS MATTER** is before the Court on the following motions and memoranda: (1)
Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) and Incorporated Memorandum of
Law in Support, filed April 4, 2006 [Document # 8]; (2) Plaintiffs' Response to Defendants'
Motion to Dismiss, filed April 7, 2006[1] [Document # 10]; (3) Defendants' "Reply Memorandum
in Support of Motion to Dismiss Pursuant to Rule 12(b)(6) and in Response to Plaintiffs'
'Motion to Oppose Dismissal,'" filed April 20, 2006 [Document # 11]; (4) Plaintiffs' Sur-Reply
to Defendants' Motion to Dismiss, filed May 1, 2006[2] [Document # 12]; and (5) Plaintiffs'
Motion for Temporary Restraining Order and Incorporated Memorandum of Law in Support of
Motion, filed June 6, 2006 [Document # 13].  These Motions are now ripe for disposition by the
Court.

---

[1]Plaintiffs titled their Response as a "Motion to Oppose Dismissal."

[2]Plaintiffs titled their Sur-Reply as a "Response in Support of Motion to Oppose Dismissal."  Despite
Plaintiffs' failure to request leave to file this Sur-Reply, in light of Plaintiffs' *pro se* status, the Court will consider
this Sur-Reply in ruling on Defendants' Motion to Dismiss.

## I. FACTUAL AND PROCEDURAL HISTORY

For purposes of this Motion to Dismiss, the Court accepts the following facts derived

from Plaintiffs' Amended Complaint as true.[3]  *See Darcangelo v. Verizon Commc'ns, Inc.*, 292

F.3d 181, 189 (4th Cir. 2002) (noting that "at the motion to dismiss stage, a court must accept the

allegations in the complaint as true and view the complaint in the light most favorable to the

plaintiff").[4]

On July 23, 1998, Plaintiffs Victor Howard and Germaine Howard (collectively

"Plaintiffs") entered into a loan transaction with FirstPlus Financial, Inc ("FirstPlus"), which

resulted in a security interest on Plaintiffs' home located at 6820 Flintrock Road, Charlotte,

North Carolina (the "Loan Transaction").  (Am. Compl. ¶ 5).  As a result of alleged errors by

Defendant during the Loan Transaction, on March 6, 2001, Plaintiffs filed a lawsuit in this Court,

seeking rescission of the loan due to Truth in Lending Act violations and asserting an unfair and

---

[3]Plaintiffs filed their Complaint on February 17, 2006, and then, after Defendants filed their Motion to Dismiss, filed an Amended Complaint on April 7, 2006.  Notably, "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . [o]therwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."  FED. R. CIV. P. 15(a).  The Fourth Circuit has consistently held that a motion to dismiss is not a responsive pleading and therefore does not cut off a plaintiff's right to amend his complaint once as a matter of course.  *See, e.g., Domino Sugar Corp. v. Sugar Workers Local Union 392*, 10 F.3d 1064, 1068 n. 1 (4th Cir.1993); *Smith v. Blackledge*, 451 F.2d 1201, 1203 n. 2 (4th Cir.1971).  Therefore, since Defendants had not filed a responsive pleading, but had only filed a Motion to Dismiss, Plaintiffs were permitted to file an amended complaint without leave of court.

[4]Rule 12(b) of the Federal Rules of Civil Procedure provides that when, on a motion to dismiss for failure to state a claim upon which relief can be granted, "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."  FED. R. CIV. P. 12(b).  In the instant case, Defendants' attached a copy of the fully executed Second Settlement Agreement and associated correspondence resulting from the First Lawsuit to their Reply in Support of Defendants' Motion to Dismiss.  Likewise, Plaintiffs attached various documents to their Sur-Reply.  Despite these attachments, however, the Court will not consider any documents other than those relied on by the parties in the pleadings and, therefore, will not convert this Motion to Dismiss to a Motion for Summary Judgment.  However, the Court will take judicial notice of the documents filed in the First Lawsuit, as well as all documents filed in the bankruptcy petition, titled *In re Germaine Nickles Howard*, Case No. 05-30287.  FED. R. EVID. 201.

2

deceptive trade practices claim.[5]  (*See Victor Howard and Germaine Howard v. H. Terry Hutchens, P.A. and Liberty Savings Bank, FSB*, 3:01CV112) (the "First Lawsuit").  On June 11, 2001, the parties entered into and executed a settlement agreement, which purported to resolve the First Lawsuit (the "First Settlement Agreement").  (Pls.' Resp. Exh. 1).  Among other things, the First Settlement Agreement required Plaintiffs to execute a Loan Modification Agreement with Defendant Liberty Savings Bank, FSB ("Liberty"), and to dismiss the First Lawsuit and State Lawsuit. (*Id.*).  On June 25, 2001, Plaintiffs executed a Loan Modification Agreement ("First Loan Modification"), and this document combined with the First Settlement Agreement provided the terms of Plaintiffs' obligations to Defendants regarding the original loan transaction.  (First Lawsuit, Dec. 3, 2001 Order, Doc. # 14).  The First Loan Modification established that Plaintiffs would make monthly payments of $806.11 constituting principal and interest, to begin July 1, 2001, and payable on the first of each month thereafter for 30 years. (*Id.*).  Despite signing the First Settlement Agreement and First Loan Modification, Plaintiffs failed to make the July 2001 and August 2001 payments, and failed to dismiss either the First Lawsuit or the State Lawsuit.  (*Id.*).  In fact, Plaintiffs did not make a payment to Defendants until August 31, 2001, then subsequently failed to make the September, October, and November 2001 payments.  (*Id.*).

Consequently, on October 15, 2001, Defendants filed a Motion to Enforce Settlement Agreement, which this Court granted in an Order dated December 3, 2001.  (*Id.*).  However,

---

[5]Prior to filing the First Lawsuit, on February 20, 2001, Plaintiffs filed a Complaint in Mecklenburg County Superior Court, captioned *Victor Howard and Germaine Howard v. H. Terry Hutchens, P.A., Substitute Trustee and Liberty Savings Bank, F.S.B.*, No. 01-CVS-3365 (the "State Lawsuit"), seeking to enjoin Defendant Liberty Savings Bank, F.S.B. from foreclosing on the Deed of Trust.

despite the Court's Order, Plaintiffs failed to make any further payments or to dismiss either action. Therefore, on January 8, 2002, Defendants filed a "Motion for Order to Show Cause and to Find Plaintiffs in Civil Contempt." (First Lawsuit, Doc. # 15). In response, Plaintiffs filed a Motion to Set Aside the December 3, 2001 Order pursuant to Rule 60 of the Federal Rules of Civil Procedure. (First Lawsuit, Doc. # 21). On April 22, 2002, the Court held a hearing to resolve issues presented by the parties. However, subsequent to the April 22, 2002 hearing but prior to the Court's issuance of an Order on these Motions, on June 14, 2002, the parties entered into a Second Settlement Agreement and Release of All Claims (the "Second Settlement Agreement"). (Defs.' Reply, Exh. 2). Additionally, on June 14, 2002, the parties executed a second Loan Modification Agreement ("Second Loan Modification"). (*Id.*). Among other things, the Second Loan Modification provided for Plaintiffs to make monthly payments of $686.90 constituting principal and interest, to begin July 1, 2002, and payable on the first of each month thereafter until June 1, 2031. (*Id.*). Finally, on August 22, 2002, the parties filed a Stipulation of Dismissal with Prejudice in the First Lawsuit. (First Lawsuit, Doc. # 30).

Despite the resolution of the First Lawsuit, on February 17, 2006, Plaintiffs filed their Complaint in this case (the "Second Lawsuit"), seeking rescission of the loan due to violations of the Truth in Lending Act, and alleging claims for unfair and deceptive trade practices and violation of the Equal Credit Opportunity Act. Then, on April 7, 2006, Plaintiffs filed an Amended Complaint, in which they added a claim for violations of the Fair Debt Collection Practices Act.

## II. DISCUSSION

### A.      Motion to Dismiss

Defendants now seek to dismiss Plaintiffs' claims for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6).

### 1.      Standard of Review

The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of a plaintiff's complaint. *Suarez v. Charlotte-Mecklenburg Schs.*, 123 F. Supp. 2d 883, 885-86 (W.D.N.C. 2000) (citing *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). In considering a Rule 12(b)(6) motion to dismiss, the court must take the allegations in the complaint as true and construe the facts alleged in the complaint in the light most favorable to the plaintiff. *GE Inv. Private Placement v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001). "[Dismissal may occur] only if it appears beyond doubt that the plaintiff[ ] can prove no set of facts in support of [her] claim that would entitle [her] to relief." *Jackson v. Blue Dolphin Commc'ns of N.C., L.L.C.*, 226 F. Supp. 2d 785, 788-89 (W.D.N.C. 2002) (brackets in original) (quoting *Flood v. New Hanover County*, 125 F.3d 249, 251 (4th Cir. 1997)).

To survive a Rule 12(b)(6) motion, "a complaint need only outline a recognized legal or equitable claim which sufficiently pinpoints the time, place, and circumstances of the alleged occurrence and which, if proven, will justify some form of relief." *Jackson*, 226 F. Supp. 2d at 789 (citation omitted). A motion to dismiss is not limited to claims of law which are obviously unsupportable; rather if, as a matter of law, it is obvious that no relief could be granted under any set of facts alleged by the plaintiff, the claim must be dismissed. *Id.* (quoting *Neitzke v. Williams*, 490 U.S. 319, 326-27, 109 S. Ct. 1827 (1989)).

Significantly, although a court must accept as true all material factual allegations in the complaint, the court does not need to accept a plaintiff's "conclusory allegations regarding the legal effect of the facts alleged." *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995).

2. **Counts One and Two: Truth in Lending Act and Unfair and Deceptive Trade Practices**

Notably, the allegations for violations of the Truth in Lending Act and claim of unfair and deceptive trade practices asserted in this lawsuit are <u>identical</u> to the claims alleged in the First Lawsuit.[6] (*See* First Lawsuit, Compl. ¶¶ 18-21, 23-25; Second Lawsuit, Compl. ¶¶ 28-31, 33-35, Am. Compl. ¶¶ 28-31, 33-35). However, the parties have already resolved these claims, as evidenced by the Stipulation of Dismissal With Prejudice, filed in the First Lawsuit on August 22, 2002.

Under North Carolina law the doctrine of *res judicata* provides that "'a final judgment, rendered on the merits by a court of competent jurisdiction, is conclusive as to the issues raised therein with respect to the parties . . . and constitutes a bar to all subsequent actions involving the same issues and parties.'" *George v. McClure*, 245 F. Supp. 2d 735, 738 (M.D.N.C. 2003) (quoting *Kabatnik v. Westminster Co.*, 63 N.C. App. 708, 711-12, 306 S.E.2d 513, 515 (1983)); *see also Nash County Bd. of Ed. v. Biltmore Co.*, 640 F.2d 484, 486 (4th Cir. 1981) (stating that the doctrine of *res judicata* provides that "a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action"). The essential elements of this doctrine are: (1) a final judgment on the merits in an earlier suit; (2) the identity

---

[6]In fact, many of the factual allegations in the Complaint from the First Lawsuit are <u>identical</u> to factual allegations in this lawsuit. (*See* First Lawsuit, Compl. ¶¶ 1-16, prayer for relief ¶¶ 1-5; Second Lawsuit, Am. Compl. ¶¶ 1-16, prayer for relief ¶¶ 1, 2, 5, 6, 7).

of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their

privies in the two suits. *Nash County*, 640 F.2d at 486.

First, for *res judicata* to apply, there must have been a final adjudication on the merits.

*George*, 245 F. Supp. at 738 (citing *Kabatnik*, 63 N.C. App. at 712, 306 S.E.2d at 515). Notably,

"[a] dismissal with prejudice is an adjudication on the merits and has *res judicata* implications.'"

*George*, 245 F. Supp. at 738 (citing *Caswell Realty Assocs., L.P. v. Andrews Co., Inc.*, 128 N.C.

App. 716, 720, 496 S.E.2d 607, 610 (1998); *Kenny v. Quigg*, 820 F.2d 665, 669 (4ᵗʰ Cir. 1987)

(stating that "a voluntary dismissal with prejudice is a valid, final judgment on the merits"). In

the instant case, the August 22, 2002 Stipulation of Dismissal, filed in the First Lawsuit,

constitutes a final adjudication on the merits.

Second, there must be identity of the cause of action asserted in the earlier action and the

later action. In this case, as discussed above, the allegations in Count One and Count Two in the

First Lawsuit Complaint and Count One and Count Two in the Amended Complaint filed in this

lawsuit are <u>identical</u>. Therefore, there is an identity in the causes of action asserted in both

lawsuits.

Finally, the two suits must have identity of parties or their privies. Here, the Plaintiffs are

identical in both the First Lawsuit and the Second Lawsuit. Moreover, Liberty Savings Bank,

FSB is named as a Defendant in both lawsuits. However, Plaintiffs named H. Terry Hutchens,

P.A., Substitute Trustee, as a Defendant in the First Lawsuit, but now they name Thomas P.

Brim, Substitute Trustee, as a Defendant in the instant lawsuit. Notably, though, a review of the

Amended Complaint in the Second Lawsuit leads the Court to conclude that Defendant Thomas

Brim should be dismissed as a Defendant. Other than the allegation that "Defendant Thomas P.

Brim, Substitute Trustee (hereinafter "Trustee"), is an attorney with a place of business in

Charlotte, North Carolina," there are no claims in the Amended Complaint that allege any actions

or conduct on the part of Defendant Brim. Therefore, the Court will dismiss Defendant Brim

from this lawsuit with prejudice. Consequently, the parties in the First Lawsuit - Plaintiffs Victor

Howard and Germaine Howard and Defendant Liberty Savings Bank, FSB - are the same named

parties in the Second Lawsuit.

In sum, the Stipulation of Dismissal with Prejudice filed in the First Lawsuit operates as a

final adjudication on Plaintiffs' first two causes of action and the doctrine of *res judicata* bars

Plaintiffs from maintaining their claims for violations of the Truth in Lending Act and unfair and

deceptive trade practices. Accordingly, those claims are hereby dismissed with prejudice.

### 2.    Count Three: Equal Credit Opportunity Act

Defendants move to dismiss Plaintiffs' claim for violation of the Equal Credit

Opportunity Act, 15 U.S.C. §§ 1691, *et. seq.* ("ECOA"), for failure to state a claim upon which

relief can be granted. (Defs.' Mot. to Dismiss pp. 2-3).

The ECOA provides that "[i]t shall be unlawful for any creditor to discriminate against

any applicant, with respect to any aspect of a credit transaction – (1) on the basis of race, color,

religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a). In addition to the

generalized prohibition against discrimination, the ECOA also provides procedural requirements

for extending credit and communicating with a credit applicant. 15 U.S.C. § 1691(d); *Madrigal

v. Kline Oldsmobile, Inc.*, 423 F.3d 819, 822 (8th Cir. 2005). Specifically, "[e]ach applicant

against whom adverse action is taken shall be entitled to a statement of reasons for such action

from the creditor." 15 U.S.C. § 1691(d)(2). To establish a procedural violation of the ECOA, a

plaintiff must show that the creditor took adverse action against him with respect to a credit

application without providing written explanation of the reasons for the adverse action.

*Madrigal*, 423 F.3d at 822; *Treadway v. Gateway Chevrolet Oldsmobile, Inc.*, 362 F.3d 971,

977-78 (7th Cir. 2004). An "adverse action" for purposes of the ECOA is

> a denial or revocation of credit, a change in the terms of an existing credit
> arrangement, or a refusal to grant credit in substantially the amount or on
> substantially the terms requested. *Such term does not include a refusal to extend
> additional credit under an existing credit arrangement where the applicant is
> delinquent or otherwise in default of where such additional credit would exceed a
> previously established credit limit.*

15 U.S.C. § 1691(d)(6) (emphasis added). The regulations likewise provide that an "adverse

action" does not include "[a]ny action or forbearance relating to an account taken in connection

with inactivity, default, or delinquency as to that account." 12 C.F.R. 202.2(c)(2)(ii).

In the instant case, Plaintiffs contend that they "made an oral application for [an]

extension of additional credit through their attorney, James Hairston, Jr. that was communicated

to Liberty Savings Bank, FSB via their attorney, D. Christopher Osborne. . . . Defendant Liberty

Savings Bank, FSB rejected this credit application but failed to state, in writing or otherwise,

why the Plaintiffs' credit application was rejected." (Am. Compl. ¶ 39). Even taking the facts in

the light most favorable to Plaintiffs, if Defendant Liberty failed to provide an explanation for its

actions in rejecting Plaintiffs' oral credit application, such rejection was "relating to an account

taken in connection with [Plaintiffs'] inactivity, default, or delinquency" with regard to the loan

at issue. In fact, Plaintiffs' Amended Complaint is premised upon actions taken by Defendant

Liberty as a result of Plaintiffs' delinquency or failure to adhere to the payment terms of the

Second Settlement Agreement and/or Plaintiffs' non-payment of the property taxes as agreed to

in the Second Settlement Agreement. (Am. Compl. ¶¶ 5-27, 38-39).  Since Defendant Liberty's

alleged refusal to extend additional credit to Plaintiffs resulted from Plaintiffs' own delinquency,

Plaintiffs cannot show that Defendant took adverse action against them with respect to a credit

application without providing written explanation of the reasons for the adverse action.  In sum,

no adverse action occurred.  Therefore, Plaintiffs cannot maintain a claim pursuant to the ECOA.

### 3.        Count Four: Fair Debt Collection Practices Act Violations

Finally, Defendants move to dismiss Plaintiffs' claim for violations of the Fair Debt

Collection Practices Act, 15 U.S.C. §§ 1692, *et. seq.* ("FDCPA") for failure to state a claim upon

which relief can be granted.  Specifically, Defendants argue, in part, that Plaintiffs failed to allege

violations of the FDCPA with sufficient particularity to allow the Court to determine what

actions of Defendants the violations are predicated upon.  (Defs.' Reply pp. 7-8).

"The FDCPA seeks to protect consumers from abusive, deceptive and unfair debt

collection practices by establishing, in part, guidelines for communications by debt collectors."

*Creighton v. Emporia Credit Service, Inc.*, 981 F. Supp. 411, 414 (E.D. Va. 1997).  In order to

establish a *prima facie* case for a violation of the FDCPA, a plaintiff must show: (1) the plaintiff

is a "consumer" within the meaning of the statute; (2) the defendant collecting the debt is a "debt

collector" within the meaning of the statute; and (3) the defendant has violated by act or omission

a provision of the FDCPA.  *Id.*

A review of Plaintiffs' Amended Complaint leads the Court to concluded that the FDCPA

claim must be dismissed.  First, Plaintiffs do not allege any of the elements needed to establish a

*prima facie* claim.  (*See* Am. Compl. ¶¶ 27, 41, 42).  There are no factual allegations that

Plaintiffs meet the definition of  "consumer" within the statute, or that Defendant Liberty is a

"debt collector." More importantly, however, Plaintiffs do not provide factual allegations to support their legal conclusion that Defendant Liberty violated a provision of the FDCPA.[7] Rule 8 of the Federal Rules of Civil Procedure only requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The short and plain statement need only give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). Significantly, however, conclusory allegations unsupported by specific allegations of material fact are not sufficient to meet the requirements of Rule 8. *Simpson v. Welch*, 900 F.2d 33, 35 (4th Cir. 1990). Instead, the plaintiff must allege facts that support each element of his claim. *Dickson v. Microsoft Corp.*, 309 F.3d 193, 201-02 (4th Cir. 2002).

Even when judging Plaintiffs' *pro se* Amended Complaint less stringently than the review given to pleadings filed by an attorney, the Court finds that the Amended Complaint is riddled with conclusory legal allegations.[8] (*See* Am. Compl. ¶¶ 27a-j). Despite this Court's application of a less strict standard in considering the Amended Complaint, even *pro se* parties must comply with the Rules of Civil Procedure. Consequently, Plaintiffs' FDCPA claim must be dismissed for failure to state a claim upon which relief can be granted. *See Booker Washington Mutual Bank, FA*, 375 F. Supp. 2d 439 (M.D.N.C. 2005) (dismissing plaintiff's various claims, including

---

[7] In fact, Plaintiffs fail to specify which provisions of the multifaceted federal statute, 15 U.S.C. §§ 1692a - 1692o, have been violated by Defendants.

[8] The Court assumes from the language of Plaintiffs' Response and Sur-Reply to Defendants' Motion to Dismiss that they intended the Response and Sur-Reply to serve either as a second amendment to the Complaint or simply to remedy its deficiencies. However, a memorandum in opposition or response cannot remedy a party's defects in its complaint. *Booker v. Washington Mutual Bank, FA*, 375 F. Supp. 2d 439, 441-42 (M.D.N.C. 2005).

allegations of violations of FDCPA, for failure to state a claim upon which relief can be granted).

**B.      Motion for Temporary Restraining Order**

On June 6, 2006, Plaintiffs filed a Motion for a Temporary Restraining Order, seeking to enjoin the Defendants from continuing the foreclosure process and evicting Plaintiffs from their home.  Plaintiffs advised the Court that eviction is to occur on Friday, June 9, 2006.

The legal standard for issuance of a temporary restraining order is the same as that for a preliminary injunction. *Commonwealth of Virginia v. Kelly*, 29 F.3d 145, 147 (4th Cir.1994). According to the United States Court of Appeals for the Fourth Circuit, in considering whether to grant injunctive relief, the following factors are relevant: (1) the likelihood of irreparable harm to the plaintiff if the relief is denied; (2) the likelihood of harm to the defendant if the requested relief is granted; (3) the likelihood that the plaintiff will succeed on the merits; and (4) the public interest.  *Direx Israel, Ltd. v. Breakthrough Medical Corp.*, 952 F.2d 802, 812 (4th Cir. 1991) (quoting *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359 (4th Cir. 1991)); *see also Blackwelder Furniture Co. v. Seilig Mfg. Co., Inc.*, 550 F.2d 189, 193 (4th Cir. 1977).

Since Plaintiffs stand to lose their home if the foreclosure proceeding continues,  the Court finds that the likelihood of irreparable harm to Plaintiffs if injunctive relief is denied far outweighs the likelihood of harm, if any, to Defendant Liberty if the requested relief is granted.

However, although the Court is sympathetic to Plaintiffs' plight, as discussed above Plaintiffs cannot demonstrate a likelihood of success on the merits of their claims.  Consequently, Plaintiffs' Motion for Temporary Restraining Order must be denied as moot.

### III.  CONCLUSION

**IT IS, THEREFORE, ORDERED** that Defendants' Motion to Dismiss is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' lawsuit is hereby **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Temporary Restraining Order is hereby **DENIED AS MOOT**.

Signed: June 8, 2006

Richard L. Voorhees
United States District Judge